UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

**BOBBY CLARK,**
**et al.**,

        Plaintiffs,

vs.

        No. CIV 2:96-141 LCS/LFG

**GALLUP AUTO SALES, INC.,**
**et al.**,

        Defendants.

**MEMORANDUM OPINION**

THIS MATTER comes before the Court upon Plaintiffs' motion for partial summary judgment as to Counts I, II and III of their amended complaint, filed November 3, 1997. After reviewing the submissions of the parties and the applicable law, and being otherwise fully advised in the premises, the Court finds that Plaintiffs' motion is partially well taken and should be granted in part and denied in part as set forth herein. An Order adopting the findings in this Memorandum Opinion is being filed concurrently herewith and made a part thereof.

**FACTUAL BACKGROUND**

This class action complaint was filed on January 31, 1996. The events underlying this action arise from Plaintiffs entering into retail installment contracts with Defendants. Under these contracts, Plaintiffs purchased used vehicles from Defendants, whereby said purchases were financed through Defendants. Plaintiffs contend that under these contracts, Defendants imposed a "surcharge" in lieu of insurance, protecting the collateral against loss or damage if the purchaser failed to provide proof of vehicle insurance. (Am. Compl. at 3-4). According to Plaintiffs, this

practice constitutes a violation of the Truth in Lending Act (TILA), as stated in Count I of the amended complaint. (Am. Compl. at 11-12). In addition, Plaintiffs also aver three state law claims. (Am. Compl. at 12-17).

Defendants are in the business of selling and financing automobiles. According to Plaintiffs, Defendants engage and continue to engage in a practice of charging customers who purchase vehicles by means of a retail installment contract, a $75 per month surcharge. Plaintiffs also allege that the surcharge is imposed as an incident to the extension of credit. Essentially, Plaintiffs contend that Defendants have violated TILA by failing to disclose the true cost of credit by (1) not including the surcharge as part of the "amount financed" and (2) by excluding the surcharge from the "finance charge" equation. (Pls.' Reply at 3).

## PROCEDURAL BACKGROUND

On November 5, 1996, citing its concerns over certain parts of the complaint, as well as the issues of supplemental jurisdiction and judicial efficiency, this Court denied Plaintiffs' initial motion for class certification. Thereafter, in an effort to placate those concerns, Plaintiffs sought and were granted leave to file an amended complaint. After Defendants asserted state law counterclaims in their answer to the amended complaint, Plaintiffs moved to dismiss the counterclaims. The motion to dismiss those counterclaims without prejudice was granted on June 19, 1997.

At that time, Plaintiffs renewed their motion for class certification. The Court granted the motion on November 25, 1997. Therefore, the only motion currently before the Court is Plaintiff's motion for partial summary judgment as to Counts I, II and III of their amended complaint, filed November 3, 1997.

## STANDARD PERTAINING TO SUMMARY JUDGMENT

A motion for summary judgment should be granted only where no genuine issue of material fact exists, entitling the movant to judgment as a matter of law.  FED.R.CIV.P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The burden of establishing the absence of a material question of fact is on the moving party.  *Adickes*, 398 U.S. at 157.  That burden may be discharged by showing that there is an absence of evidence to support the nonmovant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  Once the movant meets his burden, the burden shifts to the nonmovant to demonstrate a genuine issue for trial on a material fact.  *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  The nonmovant may not rest on his pleadings, but must set forth specific facts showing there is a genuine issue for trial.  *Celotex Corp*, 477 U.S. at 324.

Should the nonmovant make some showing on an issue of material fact, the court must consider the standard of proof in the case and decide whether the showing is sufficient for a reasonable trier of fact to find for the nonmovant on that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A mere scintilla of evidence in the nonmovant's favor is insufficient to withstand the motion.  *Id*. at 251.  Thus, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52.  The facts must, however, be construed in favor of the nonmovant.  *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp*, 938 F.2d 1101, 1110 (10th Cir. 1991).

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.   Plaintiffs' TILA Claim (Count I of the Amended Complaint)

In their motion for partial summary judgment as to Count I, Plaintiffs assert that there is no genuine issue of material fact for trial as to their TILA claim. (Mem. Supp. Mot. for Partial Summ. J. at 9-18). Essentially, Plaintiffs argue that Defendants are in violation of TILA by failing to properly disclose the true cost of credit by (1) not including the surcharge as part of the "amount financed" and (2) excluding the surcharge from the "finance charge." (Pls.' Reply at 3).

A finance charge is generally defined as including "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a). The relevant regulations provide specific illustrations of what is considered a finance charge. 12 C.F.R. § 226.4(b). One such example is "[p]remiums or other charges for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property, written in connection with a credit transaction." 12 C.F.R. § 226.4(b)(8). Similarly, the regulations also provide examples of what is not a finance charge. *See* 12 C.F.R. § 226.4(c).

In the instant case, Defendants had a policy in place for customers who could not provide proof of vehicle insurance coverage. (Mem. Supp. Mot. for Partial Summ. J., Ex. C). This policy provided that if proof of insurance was not forthcoming, Defendants' finance company would impose a $75.00 per month surcharge for the length of the contract. *Id*. This surcharge would be added to the amount financed. *Id*.

This policy was the brainchild of Jerry Egeland, the president of Defendant companies. (Mem. Supp. Mot. for Partial Summ. J., Ex. E at 34). The evidence demonstrates that the

4

surcharge was not subjectively considered "insurance" by the parties. For example, in a form letter sent to customers by Defendants, the customer was informed that the surcharge was "not an insurance policy nor is it a liability insurance policy, as required by law." (Mem. Supp. Mot. for Partial Summ. J., Ex. L).

The evidence also indicates that the surcharge cannot be considered insurance from a legal standpoint. For one, the submissions suggest that the monies from the surcharge went directly into Defendants' pockets. This form of "self-insurance" is not generally considered to be the equivalent of insurance in that, as here, the party having the insurable risk retains the risk of his own loss and thus there is no risk transfer. *See Beech Aircraft Corp. v. United States of America*, 797 F.2d 920, 922 (10th Cir. 1986).

Recently, the Federal Reserve Board promulgated a new rule which clarifies whether certain "optional charges" are part of the finance charge. In its commentary, the Board states in relevant part:

> The Board believes that a debt cancellation fee charged by the creditor satisfies the definition of a finance charge because it is part of the cost of the credit. The TILA defines a finance charge to include any charge imposed as an incident to the extension of credit. The Board has interpreted this definition to include any fee charged by the creditor in connection with the loan, if it is not charged in comparable cash transactions and is not subject to an express exemption . . . . In the case of debt cancellation agreements, however, the voluntary nature of the arrangement does not alter the fact that debt cancellation coverage is a feature of the loan affecting the total price paid for the credit. Thus, even though a lender may not require a particular loan feature, the feature may become a term of the credit if it is included. For example, borrowers obtaining variable-rate loans may have an option to convert the loan to a fixed interest rate at a subsequent date. Even though the lender does not require that particular feature, when it is included for an additional charge . . . , that amount properly represents part of the finance charge for that particular loan, even though less costly loans may be available without that feature. This is also the case with debt cancellation coverage,

> which alters the fundamental nature of the borrower's repayment obligation. <u>Although the same loan may be available without that feature, with respect to a loan that has been structured in this manner, the debt cancellation fee is one that has been imposed as an incident to that particular extension of credit.</u>

61 Fed. Reg. 49237, 49239 (1996) (emphasis added).

In my view, the surcharge imposed by Defendants, whether imposed on a monthly or flat fee basis, is part of the finance charge because the surcharge was imposed as an incident to the extension of credit. This finding rests on the following reasons. First, Defendants concede that the surcharge was not a separate policy of insurance. (*See* Mem. Supp. Mot. for Partial Summ. J., Ex. E at 57). Second, it is admitted that the surcharge did not protect the customers from any risk of loss. *Id*. Third, applying the Board's Rule of clarification to the facts in this cause, Defendants' surcharge was "imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." *See* 12 C.F.R. § 226.4(a). Essentially, there would have been no extension of credit by Defendants if Plaintiffs had not agreed to the surcharge. Finally, it is well settled that TILA imposes liability for even technical violations and that its provisions are to be liberally construed in favor of the consumer. *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir. 1995).

In their response, Defendants argue that an exception applies which did not require the disclosure of the surcharge as part of the finance charge. This exception can be found at 12 C.F.R. § 226.17(e), and states in relevant part:

> If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation, although new disclosures may be required . . . .

According to Defendants, the "subsequent event" triggering the above exception is the

Plaintiffs' failure to provide proof of the required insurance after being informed by Defendants that a surcharge would be imposed if the customer failed to maintain insurance coverage.  (Defs.' Response at 8-9).  As part of their argument, Defendants mention *Travis v. Boulevard Bank*, 880 F.Supp. 1226 (N.D.Ill. 1995).  In *Travis*, the district court found that the subsequent addition of insurance premiums constituted a new transaction, thereby requiring additional disclosures but not rendering the initial disclosures violative of TILA.  *Id*. at 1229-30.  In the instant case, Defendants contend that they were not obligated under the circumstances of making disclosures even after the imposition of the surcharge.  (Defs.' Response at 8-9).

I disagree with Defendants' interpretation of *Travis* and instead agree with Plaintiffs' view of that case.  For example, I am in accord with Plaintiffs that whether the surcharge was imposed at the time of the execution of the retail installment agreement or subsequent to that time, disclosures regarding the surcharge were nonetheless required.  *See Travis*, 880 F.Supp. at 1230.  Second, the court in *Travis* held that "the immunity for inaccuracies caused by subsequent events is not to be afforded to the creditor when the creditor causes the events that result in the inaccuracies."  *Id*.  In my estimation, Defendants directly or indirectly contributed to any subsequent imposition of the surcharge.  For these reasons, I find that the exception provided for at 12 C.F.R. § 226.17(e) does not apply to the circumstances of this case.

Finally, the parties' submissions indicate that Defendants only imposed the surcharge on financing customers.  Thus, the surcharge was not a charge "of a type payable in a comparable cash transaction." *See* 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a).  This is another reason undergirding my finding that the surcharge should have been included in the finance charge equation.

To conclude, I find Plaintiffs' motion for partial summary judgment as to their TILA claim to be well taken for the following reasons, all of which are findings under the summary judgment standard. First, the surcharge was not "insurance" per the parties' expectations, as well as according to the legal definition of that term. Second, the surcharge was not the type of charge payable in a comparable cash transaction and thus should have been included as the finance charge. *See* 15 U.S.C. § 1605(a). Third, Defendants' "subsequent events" argument is without merit. Finally, and most significantly, the evidence submitted conclusively shows that the surcharge was imposed directly or indirectly by Defendants as an incident to or a condition of the extension of credit. *See* 12 C.F.R. § 226.4(a). Therefore, I grant Plaintiffs' motion for partial summary judgment as to their TILA claim, contained in Count I of their amended complaint.

**B.     New Mexico Unfair Trade Practices Act (Count III of Amended Complaint)**

In Count III of their amended complaint, Plaintiffs assert that Defendants violated the New Mexico Unfair Practices Act, NMSA 1978, § 57-12-1 to -22 (1995). (Am. Compl. at 15-16). The New Mexico Unfair Practices Act (NMUPA) is remedial legislation and must be liberally construed. *State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 808, 737 P.2d 1180, 1185 (Ct.App. 1987).

Pursuant to the NMUPA, an "unfair or deceptive trade practice" is defined in relevant part as:

> any false or misleading oral or written statement . . . or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services [or] in the extension of credit . . . by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person and includes but is not limited to:
>
> (11) making false or misleading statements of fact concerning the price of

8

>goods or services, the prices of competitors or one's own price at a past or future time or the reasons for, existence of or amounts of price reduction;
>
>(14) . . . failing to state a material fact if doing so deceives or tends to deceive.

According to Plaintiffs, by failing to include the surcharge as part of the finance charge and annual percentage rate, Defendants grossly understated the actual price of the credit transaction. (Mem. Supp. Mot. for Partial Summ. J. at 19). Therefore, according to Plaintiffs, they were deprived of the opportunity to make a reasoned consumer decision as to the actual price of the vehicles. *Id*.

In order to establish that Defendants violated the NMUPA, Plaintiffs must demonstrate the following: (1) the representor made an oral or written statement that was false or misleading; (2) the false or misleading statement was knowingly made in connection with the extension of credit; (3) the representation occurred in the regular course of the representor's trade or commerce; and (4) the representation may, tends to or does deceive or mislead any person. *Ashlock v. Sunwest Bank of Roswell*, 107 N.M. 100, 101, 753 P.2d 346, 347 (1988), *overruled on other grounds, Gonzales v. Surgidev Corp.*, 120 N.M. 133, 899 P.2d 576 (1995). The "knowingly made" element is met if the representor "was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.* 112 N.M. 97, 100-01, 811 P.2d 1308, 1311-12 (1991).

After reviewing the parties' respective submissions and the attached exhibits, I find that Plaintiffs have satisfied the following elements of their NMUPA claim for summary judgment purposes. First, it has been demonstrated that Defendants made a false or misleading written

9

statement when they failed to include the surcharge as part of the "finance charge," thus understating the actual cost of credit. Second, it is undisputed that the representation was made during the course of Defendants' regular business or trade. Finally, Plaintiffs' submissions demonstrate that the representation may, tends to, or did deceive or mislead Plaintiffs.

However, I find that a genuine issue of material fact exists as to whether any false or misleading written statement was "knowingly" made in connection with the extension of credit. In my view, this is a question for the factfinder at trial. For this reason, I find that Plaintiffs' motion for partial summary judgment as to their NMUPA claim is not well taken and said motion will be denied.

### C.  New Mexico Motor Vehicles Sales Finance Act (Count II of Amended Complaint)

In Count II of their amended complaint, Plaintiffs allege that Defendants' actions were violative of the New Mexico Motor Vehicle Sales Finance Act, NMSA 1978, § 58-19-1 to -14 (1997). (Am. Compl. at 12-15). Specifically, Plaintiffs contend that Defendants, in their multiple roles as retail sellers, holders of retail installment agreements on vehicles, and as a sales finance company, willfully violated the New Mexico Motor Vehicle Sales Finance Act (MVSFA) by failing to make the proper disclosures and by failing to comply with TILA and federal Regulation Z. (Am. Compl. at 12-13).

I will first address Plaintiffs' contention regarding Defendants' alleged violation of TILA and the federal regulations promulgated thereto. Pursuant to NMSA 1978, § 58-19-13 (1997), any creditor subject to MVSFA who complies with TILA and TILA-related regulations is deemed to have complied with MVSFA. However, the converse is not necessarily true. That is, a

creditor who violates TILA or its regulations does not necessarily violate MVSFA. Therefore, I reject Plaintiffs' argument that would require the finding of a per se violation of MVSFA based upon TILA transgressions.

Similarly, I find no merit to Plaintiffs' more substantive argument that Defendants acted contrary to certain provisions of MVSFA. I do so primarily because, in my estimation, there exists a genuine issue of material fact as to whether Defendants "willfully" violated the MVSFA. This is a question that, in my view, should be left to the factfinder at trial.

Therefore, based upon the evidence presented in the parties' submissions, and cognizant of the standard pertaining to summary judgment, I find that Plaintiffs' motion for summary judgment as to Count II of Plaintiffs' amended complaint (violations of MVSFA) should be denied.

### D.      Defendant Egeland's Liability

In their response brief, Defendants assert that Defendant Egeland should not be found individually liable for any alleged violations of TILA and the state claims. Defendant Egeland is the president, director and sole shareholder of both Defendant corporations in this suit. (Defs.' Response at 14).

Because this issue was raised in a response brief, instead of by formal motion, I find that this matter is not properly before the Court at this time. Consequently, I will decline taking any action on this question.

## CONCLUSION

After considering the parties' submissions pertaining to the instant motion, and mindful of the proper standard, I find that Plaintiffs' motion for partial summary judgment will be granted in full as to Count I. As to Counts II (MVSFA) and III (NMUPA), I find that the motion for partial

summary judgment should be denied. An Order adopting this Memorandum Opinion shall be filed contemporaneously herewith.

_____
Leslie C. Smith
United States Magistrate Judge
Presiding with the Consent of the Parties